**Bobby L. GIBSON, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A02–0001–CR–14.**

Court of Appeals of Indiana.

July 31, 2000.

Tommy L. Strunk, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Following a bench trial, Bobby L. Gibson was convicted of possession of marijuana, a Class A misdemeanor. This appeal ensued. We reverse.

*Issues* [1]

Gibson raises the following restated issue for our review: whether the trial court properly denied his motion to suppress the marijuana seized from the warrantless search of his vehicle.

*Facts and Procedural History*

The facts most favorable to the trial court's judgment reveal that on June 12, 1999, Sergeant John Cox brought his patrol car to a halt directly behind Gibson's van which was stopped at a red traffic light. Thereafter, Sergeant Cox conducted a *random computer check* [2] of Gibson's license plate which indicated that Gibson had an outstanding warrant for his arrest from Brown County, Indiana.[3] However, Sergeant Cox did not initiate a traffic stop of Gibson's van.

Instead, Sergeant Cox followed Gibson as he drove into the parking lot of a convenience store. As Gibson exited the van and walked toward the convenience store, Sergeant Cox got out of his patrol car, stopped Gibson, and requested his driver's license. After examining the driver's license, Sergeant Cox handcuffed Gibson. Thereafter, Officer Bradley Meyers, who had responded to Sergeant Cox's call for assistance, asked Gibson if he had any weapons or contraband in his van. Gibson informed Officer Meyers that marijuana was located in the center console of his van. Neither Sergeant Cox nor Officer Meyers informed Gibson of his Miranda rights prior to Officer Meyer questioning Gibson. A plastic bag containing a green leafy substance later determined to be marijuana was retrieved from Gibson's vehicle.

Consequently, the State charged Gibson with possession of marijuana, a Class A misdemeanor.[4] Thereafter, Gibson filed with the trial court a motion to suppress the statements made by him after his arrest and the marijuana obtained from the warrantless search of his vehicle. On September 22, 1999, the trial court granted Gibson's motion· to suppress the statements made by him to Officer Meyers after he was arrested. However, on September 24, 1999, the trial court denied Gibson's motion to suppress the marijuana obtained from the warrantless search of his van. Following a bench trial, Gibson was found guilty as charged and sentenced to one year at the Indiana Department of Correction, all but two days suspended. This appeal ensued.

---

1. We note that Gibson also raises the issue that the random computer check of Gibson's license plate was an "electronic intrusion into [a] private [place] without probable cause [which] violates both the U.S. Constitution, 4th Amendment and the Indiana Constitution Article I, section 11." Brief of Appellant at 6. Because we have decided that the trial court committed reversible error in denying Gibson's motion to suppress the marijuana seized from the warrantless search of Gibson's van, we need not address this issue.

2. Sergeant Cox testified at trial that, "I run license plates routinely when I stop behind cars at stop lights because you can find wanted license plates, wanted cars, wanted people sometimes that way." R. 71–72.

3. We note that the outstanding warrant for Gibson's arrest from Brown County, Indiana was for failure to appear for fishing without a license. R. 74, 184.

4. Ind.Code § 35–48–4–11.

*Discussion and Decision*

Gibson contends that the trial court committed reversible error in denying his motion to suppress the marijuana seized from the warrantless search of his van because the search did not fit within one of the recognized exceptions to the warrant requirement. We agree.

### I. Standard of Review for Admission of Evidence

 When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and Indiana appellate courts will only reverse the ruling upon a showing of abuse of discretion. *Smoote v. State*, 708 N.E.2d 1, 3 (Ind.1999). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Stone v. State*, 536 N.E.2d 534, 538 (Ind. Ct.App.1989), *trans. denied.* When reviewing the trial court's ruling on the validity of the search, we consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Rook v. State*, 679 N.E.2d 997, 999 (Ind.Ct. App.1997) (citing *Peterson v. State*, 674 N.E.2d 528, 532 (Ind.1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998)).

### II. Warrantless Search of a Vehicle

 We note initially that Article I, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution protect against unreasonable searches and seizures and, as a general rule, require "a judicially issued search warrant [as] a condition precedent to a lawful search." *Culpepper v. State*, 662 N.E.2d 670, 675 (Ind.Ct.App.1996), *trans. denied.* Thus, searches conducted "outside the judicial process" are per se unreasonable under the Fourth Amendment, subject to a few well delineated exceptions. *Thompson v. Louisiana*, 469 U.S. 17, 19–21, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Both Article I, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution protect private and possessory interests by prohibiting unreasonable searches and seizures. *Santana v. State*, 679 N.E.2d 1355, 1358 (Ind.Ct.App.1997). The Fourth Amendment to the United States Constitution provides that:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 The Fourth Amendment protections against unreasonable search and seizure have been extended to the states through the Fourteenth Amendment. *Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, (1961)). The fundamental purpose of the Fourth Amendment of the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Berry*, 704 N.E.2d at 465. The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *State v. Farber*, 677 N.E.2d 1111, 1116 (Ind.Ct.App.1997), *trans. denied.*

### A. Probable Cause to Search a Movable Vehicle

 One exception to the warrant requirement is probable cause to believe that an operable vehicle contains contraband or evidence of a crime. The United States Supreme Court has stated that when there exists probable cause to be-

lieve that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment because of the existence of exigent circumstances arising out of the likely disappearance of the vehicle. *California v. Acevedo*, 500 U.S. 565, 569, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).[5] In addition, as long as the search is supported by probable cause, a warrantless search of a vehicle may also include a search of a container or package found in the vehicle. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate. *Young v. State*, 564 N.E.2d 968, 970 (Ind.Ct.App. 1991), *trans. denied.* Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to conclude that a search of those premises will uncover evidence of a crime. *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind.1994).

In the present case, Sergeant Cox testified at trial that when he conducted the investigatory stop of Gibson by asking him for his driver's license, he did not have any suspicion that Gibson had contraband in his vehicle. R. 194. However, Officer Meyers testified at trial that after Sergeant Cox had placed Gibson under arrest, he asked Gibson whether or not he had any weapons or drugs in his van. R. 121–22. Officer Meyers testified that Gibson informed him that he had a bag of marijuana in the center console of the van. R.

122. We believe that Gibson's admission to Officer Meyers that he had marijuana in his van provided the police with sufficient probable cause to search Gibson's van for contraband.

■■■■■ However, Officer Meyers testified that Gibson "had already been arrested and handcuffed" when he interrogated Gibson. R. 121. Officer Meyers testified that he did not advise Gibson of his Miranda rights prior to interrogating him. R. 127. In addition, Sergeant Cox testified that he never gave Gibson the Miranda warnings prior to Officer Meyers interrogating Gibson. R. 100. Miranda warnings are based upon the Fifth Amendment Self–Incrimination Clause, and were designed to protect an individual from being compelled to testify against himself. *Curry v. State*, 643 N.E.2d 963, 976 (Ind. Ct.App.1994), *trans. denied.*[6] When an accused is subjected to custodial interrogation, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the [defendant's Fifth and Fourteenth Amendment] privilege against self-incrimination." *Carter v. State*, 634 N.E.2d 830, 834 (Ind.Ct.App.1994). The safeguards of the Miranda warnings are an absolute prerequisite in overcoming the inherently coercive and police-dominated atmosphere of custodial interrogation. *Id.*

■■■■■ Police officers are not required to give a defendant Miranda warnings unless the defendant is both in custody and subject to interrogation. *State v. Linck*, 708 N.E.2d 60, 62 (Ind.Ct.App.1999), *trans. denied.* Interrogation includes both ex-

---

5. It is a well recognized principle that assuming probable cause, automobiles and other vehicles may be searched without warrants "where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll*, 267 U.S. at 153, 45 S.Ct. 280.

6. We note that the United States Supreme Court recently held that Miranda's warning-based approach to determining admissibility of a statement made by accused during custodial interrogation was constitutionally based, and could not be in effect overruled by a legislative act. *Dickerson v. United States*, —— U.S. ——, 120 S.Ct. 2326, —— L.Ed.2d —— (2000).

press questioning and words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* However, interrogation must involve a measure of compulsion beyond that inherent in custody itself. *Id.* In order to be in custody for purposes of Miranda, one need not be placed under formal arrest. *Thompson v. State,* 692 N.E.2d 474, 476 (Ind.Ct.App.1998). Rather, the determination is based upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in the accused's circumstances would believe that he is not free to leave. *Id.* The determination involves an examination of all the objective circumstances surrounding the interrogation. *Loving v. State,* 647 N.E.2d 1123,1125 (Ind.1995).

Officer Meyers questioned Gibson as he sat handcuffed in the passenger's seat of Sergeant Cox's police car. R. 121. Gibson was clearly in custody when he was interrogated by Officer Meyers. Because Gibson was not given his Miranda warnings prior to the custodial interrogation, his statements cannot provide a basis for probable cause to search Gibson's van. Thus, the warrantless search of Gibson's van does not fit within the probable cause exception to the warrant requirement because Gibson's statements were in contravention of his Miranda rights.

### B. Search Incident to an Arrest

Another recognized exception to the warrant requirement is a search conducted incident to a lawful arrest. *Caudill v. State,* 613 N.E.2d 433, 439 (Ind. Ct.App.1993). "Incident to lawful arrest, the arresting officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control." *Culpepper,* 662 N.E.2d at 675 (citing *Chimel v. California,* 395 U.S. 752, 772, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Evidence resulting from a search incident to a lawful arrest is admissible at trial. *Hammond v. State,* 594 N.E.2d 509, 514 (Ind.Ct.App.1992), *trans. denied.* Two historical rationales for the search incident to arrest exception to the warrant requirement include: (1) the need to disarm the suspect in order to take him into custody; and (2) the need to preserve evidence for later use at trial. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Furthermore, we do not require that a search incident to an arrest be made immediately following the arrest of the person involved. *Caudill,* 613 N.E.2d at 439.

#### 1. Lawful Arrest

Our initial inquiry under this exception to the warrant requirement is to determine whether the arrest itself was lawful. *Culpepper,* 662 N.E.2d at 675. Indiana Code section 35–33–1–5 defines an arrest as "taking of a person into custody, that he may be held to answer for a crime." An arrest has occurred when a police officer "interrupts the freedom of the accused an[d] restricts his liberty of movement." *Sears v. State,* 668 N.E.2d 662, 667 (Ind.1996). In addition, even when a police officer does not tell a defendant that he is under arrest prior to a search, that fact does not invalidate a search incident to an arrest as long as there is probable cause to make an arrest. *Jackson v. State,* 588 N.E.2d 588, 590 (Ind. Ct.App.1992). Furthermore, the subjective belief of the police officer that he may not have probable cause to arrest a defendant when he handcuffs the defendant has no legal effect. *Roberts v. State,* 599 N.E.2d 595, 598 (Ind.1992).

Probable cause for arrest exists where at the time of the arrest the officer has knowledge of facts and circumstances which warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Id.* An unlawful arrest cannot be the foundation of a lawful search. *Regan v. State,* 590 N.E.2d 640, 644 (Ind.Ct.App.1992). Moreover, evidence which is the product of an unlawful detention or an illegal arrest is inadmissi-

ble. *Id.* Evidence obtained as a direct result of a search conducted after an illegal arrest is excluded under the fruit of the poisonous tree doctrine. *Jackson v. State,* 669 N.E.2d 744, 749 (Ind.Ct.App. 1996).

Here, Sergeant Cox testified that after he ran a random computer check of the license plate number located on Gibson's van, he learned that Gibson had an outstanding warrant for his arrest. R. 71–72, 184–85. Furthermore, Sergeant Cox testified that after he determined Gibson's identity, he placed him in handcuffs, which clearly interrupted Gibson's freedom and restricted his movement. R. 81–82, 88. It is clear that Sergeant Cox had probable cause to arrest Gibson and thus, Sergeant Cox lawfully arrested Gibson.

### 2. Scope of the Search

Because we have determined that Gibson's arrest was lawful, we must now determine whether the search of Gibson's vehicle exceeded the scope of a search incident to his arrest. The scope of a search incident to a valid arrest is generally limited to a search of the person of the arrestee and the area within his immediate control to which he could reach for weapons or to destroy evidence. *Chimel,* 395 U.S. at 766, 89 S.Ct. 2034. Thus, a search going beyond the immediate control of the arrestee is unlawful unless accompanied by a valid search warrant. *Patterson v. State,* 253 Ind. 499, 255 N.E.2d 520, 526 (Ind. 1970). The United States Supreme Court has discussed the "area within the immediate control of the arrestee," stating that:

> No straightforward rule has emerged from the litigated cases respecting the question involved here—the question of the proper scope of the search of the interior of an automobile incident to a lawful custodial arrest of one of its occupants.
> * * *
> While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, the courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant.... In order to establish the workable rule this category of cases requires, we read *Chimel*'s definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

*New York v. Belton,* 453 U.S. 454, 459–460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (citations and footnote omitted).

In the present case, Sergeant Cox testified at trial that he *did not* initiate a traffic stop of Gibson's vehicle. R. 80. Sergeant Cox testified that he followed Gibson's van into the parking lot of a convenience store. R. 81.[7] Furthermore, Sergeant Cox testified that he approached Gibson and asked him for identification after Gibson had parked his van in the parking lot of the convenience store and had exited his vehicle. R. 81. Sergeant Cox testified that he stopped Gibson and asked him for identification in order to confirm that the name, birth date, and social security number of the driver's license corresponded with the information listed on his computer screen.[8]

---

7. It is apparent from the record that Sergeant Cox did not initiate a traffic stop of Gibson's van because he was attempting to first determine whether the driver of the van was Gibson by comparing the physical description of Gibson listed on his computer screen with the physical description of the driver of the van.

R. 79. After concluding that the physical descriptions matched, Sergeant Cox approached Gibson as he walked toward the convenience store and asked him for identification. R. 81.

8. The United States Supreme Court has stated that "[a] brief stop of a suspicious individual,

R. 83. Moreover, Sergeant Cox testified at trial that after he obtained Gibson's driver's license, he "asked [Gibson] to stay outside his truck, and I went back to my car to try to start confirming the warrant." *Id.*

We believe that the facts of the present case indicate that the search of Gibson's van exceeded the permissible scope of the search incident to an arrest exception of the warrant requirement. Gibson was stopped by Sergeant Cox, and subsequently arrested outside of his vehicle as he walked toward the entrance of the convenience store. The marijuana was not on Gibson's person nor was it within the area of his immediate control, rather it was in the interior of his van. Therefore, we believe that the scope of the search incident to Gibson's arrest was limited to his person because he was stopped and arrested in the parking lot of convenience store and not his vehicle.

 If Sergeant Cox had stopped Gibson while he was in his vehicle, and later subjected Gibson to a lawful custodial arrest, Sergeant Cox would be justified in searching the interior of the automobile within Gibson's immediate control if the search was conducted contemporaneously with the arrest. After an officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle. *Belton*, 453 U.S. at 460, 101 S.Ct. 2860 (1981); *Perkins v. State*, 451 N.E.2d 354, 356 (Ind. Ct.App.1983). Such a search may include an examination of the contents of any containers found within the passenger compartment, including a glove compartment. *Belton*, 453 U.S. at 461 n. 4, 101 S.Ct. 2860 In addition, it is of no moment that such a search occurs after the occupant has been removed from the vehicle. *Jackson v. State*, 597 N.E.2d 950, 957 (Ind.1992).

 A police officer will typically search a vehicle after placing an occupant under arrest because he or she has probable cause to believe that contraband or weapons are contained in the vehicle. For example, when drug paraphernalia or a substance believed to be an illegal drug is in plain view inside the automobile, *see Strangeway v. State*, 720 N.E.2d 724, 725 (Ind.Ct.App.1999); *Easley v. State*, 166 Ind.App. 316, 335 N.E.2d 838, 840 (Ind.Ct. App.1975); or an occupant of the vehicle is making furtive movements which indicates that the individual is either attempting to hide or destroy evidence. *See Jackson v. State*, 669 N.E.2d at 746; *Bandelier v. State*, 175 Ind.App. 571, 372 N.E.2d 1235, 1236 (Ind.Ct.App.1978). In addition, a police officer often will search a vehicle after placing a occupant under lawful custodial arrest when he or she is concerned about his or her safety because of furtive or threatening behavior on the part of an occupant of the vehicle. *See e.g., Fyock v. State*, 436 N.E.2d 1089, 1092 (Ind.1982).

The facts in the present case do not permit the police to conduct a warrantless search of Gibson's vehicle under the search incident to an arrest exception to the warrant requirement. The interior of the van was not within the area of Gibson's immediate control, the area from within which he might have gained possession of a weapon or destructible evidence. Furthermore, the police did not have probable cause or any indicia to believe that contraband or weapons were located in Gibson's van. Thus, any search of Gibson's van was not valid under the search incident to an arrest exception to the warrant requirement.

### C. Inventory Search of a Vehicle

Although we have determined that the police did not have probable cause to search Gibson's van nor did the search fit

in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer

at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

within the search incident to an arrest exception to the warrant requirement, we will now examine whether the marijuana obtained from the van would be admissible because of the "inevitable discovery" of the contraband during an inventory search of the vehicle.

As an exception to the exclusionary rule, our courts have held that "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *Banks v. State*, 681 N.E.2d 235, 240 (Ind.Ct.App. 1997) (quoting *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The rationale behind the "inevitable discovery" rule is that when the authorities have seized evidence in violation of statutory or constitutional protections, they should be placed in no better, but no worse, position than they would have been had no impropriety occurred. *Bartruff v. State*, 706 N.E.2d 225, 229 (Ind.Ct.App. 1999). However, for the "inevitable discovery" rule to be applicable in the present case, the impoundment and later inventory search of Gibson's van must be valid.

A valid inventory search is a well-recognized exception to the warrant requirement. *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Fair v. State*, 627 N.E.2d 427, 431 (Ind.1993). The rationale for the inventory exception is three-fold: 1) protection of private property in police custody; 2) protection of police against claims of lost or stolen property; and 3) protection of police from possible danger. *Opperman*, 428 U.S. at 396, 96 S.Ct. 3092; *Moore v. State*, 637 N.E.2d 816, 819 (Ind. Ct.App.1994), *trans. denied, cert. denied*, 513 U.S. 1165, 115 S.Ct. 1132, 130 L.Ed.2d 1093 (1995). An inventory search is by definition within a non-criminal context. *Moore*, 637 N.E.2d at 819 (citing *Fair*, 627 N.E.2d at 431). The ultimate standard dictated by Article I, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution is reasonableness of the police conduct. *Peete v. State*, 678 N.E.2d 415, 419 (Ind.Ct.App.1997). Likewise, the test of constitutionality in the inventory search context is reasonableness. *Id.* The Indiana Supreme Court has stated that:

> In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case.... This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated. Where either is clearly unreasonable, the search will not be upheld. In borderline cases, however, the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together.

*Fair*, 627 N.E.2d at 431.

### 1. Impoundment of the Vehicle

Our initial inquiry under the inventory exception to the warrant requirement is to determine whether the impoundment, which provides the underpinnings for a valid inventory search, was in fact lawful. *Moore*, 637 N.E.2d at 819. The Indiana Supreme Court has held that to lawfully impound a vehicle under the community care-taking function, the State must demonstrate: (1) that the belief that the vehicle posed some threat or harm to the community or was itself imperiled is consistent with objective, sound policing; and (2) that the decision to combat the threat by impoundment was in keeping with established departmental routine or regulation. *Fair*, 627 N.E.2d at 433. The question is not whether there was an absolute need to dispose of the vehicle but whether the decision to do so was reason-

able in light of the applicable standard. *Id.*

■ Typically, the needs of the community are implicated when: (1) the arrest of the driver has left his car unattended on a highway; (2) where the owner of the vehicle cannot be located; and (3) where the vehicle is on private property and the owner of the property has requested removal. *Id.* In the present case, we have an undamaged vehicle neatly parked in a relatively secure private parking facility, a convenience store. Gibson's lawful possession of the vehicle was not questioned. Furthermore, there had been no complaint from the owner of the property and there was no unqualified driver, such as one without a valid driver's license, in whose possession Gibson's van would be left if the police did not impound the vehicle. Thus, it appears that the officers' sole justification for impoundment is that Gibson's vehicle, left unattended at the parking lot of the convenience store as a result of his custodial arrest, would be exposed to theft or vandalism or might otherwise be a nuisance.[9]

■ The Indiana Supreme Court has articulated two factors which must be considered by courts in determining whether vehicles such as Gibson's constitute a hazard which justifies the police impounding the vehicle. The first factor is the degree to which the property upon which the vehicle is situated was under the control of the defendant. *Fair,* 627 N.E.2d at 434. The second factor is the length of time the impounding officer perceived the vehicle would be unattended. *Id.* Our Supreme Court added in *Fair* that "[i]t helps assess the reasonableness of the officer's conclusion that the vehicle, if left alone, would be exposed to an unacceptable risk of theft or vandalism." *Id.*

### 2. Impoundment of Gibson's Van Was Not Warranted

■ In the present case, Gibson's vehicle was parked on private property, the parking lot of a convenience store, a situs with which Gibson had no connection. R. 80. In addition, it was established at trial that at the time of his arrest, Gibson was not given the opportunity to telephone a relative or a friend to retrieve the van. R. 115. For purposes of our analysis, we must assume that the marijuana was not found until the police conducted an inventory search of Gibson's van because of our determinations that the police lacked probable cause to believe the vehicle contained contraband and that the warrantless search of the vehicle did not fit within the search incident to arrest exception to the warrant requirement. Thus, the sole basis for Gibson's arrest for purposes of our analysis is Gibson's failure to appear for fishing without a license, a Class C infraction.[10] This reveals the likelihood that Gibson would have been released on his

---

9. We note that the Vehicle Tow–In Record lists the reason for the impoundment as "arrest." R. 105. Amendment To Vehicle Towing Section 0.123, Page 29, the police department's towing and inventory policy, provides in pertinent part that:

> Removal of a vehicle where the arrest of the individual would leave the vehicle exposed to theft or vandalism or cause the vehicle to be a nuisance if not impounded. In this case the court would look at two primary factors to determine if this was a proper impoundment:
> a. The degree to which the property upon which the vehicle was located was under the control of the defendant (an example of this is whether the vehicle is

left in the driveway of the defendant's brother's house or is left parked in a dark alley.)
> b. The length of time that the impounding officer perceived that the car will be unattended (will the defendant be able to bond out quickly or have a friend come to pick up the car in a short period of time?)

R. 91. Sergeant Cox relied upon this provision of the impoundment policy as the basis for impounding Gibson's vehicle. R. 89–90, 107–08.

10. Indiana Code section 14–11–2–2 provides that "[a] person who violates a rule adopted under this chapter commits a Class C infraction."

own recognizance or on a nominal bond within a brief time after his arrest and could have reclaimed his car.

We believe that the record lacks appropriate evidence to establish that Gibson's vehicle constituted a potential hazard from which the police felt justified in impounding the vehicle. It is apparent from the record that an impoundment of Gibson's van in the present case would be nothing more than a pretext to search the vehicle for contraband. Because we have determined that the warrantless search of Gibson's van does not fit within the inventory search exception to the warrant requirement, we cannot give the State the benefit of the admissibility of the evidence per the "inevitable discovery" rule.

Having determined that the warrantless search of Gibson's van did not fit within the probable cause, search incident to arrest, or inventory search exceptions to the warrant requirement, we hold that the trial court erred in denying Gibson's motion to suppress the marijuana obtained from his vehicle.

### D. Harmless Error

Although we have determined that the trial court erred in denying Gibson's motion to suppress the marijuana seized from Gibson's van into evidence, we must now examine whether the error was harmless or reversible. A Fourth Amendment error is subject to constitutional harmless error analysis. *Esquerdo,* 640 N.E.2d at 1030. If we can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict, then the error is harmless. *Id.* In the present case, the only evidence of the possession was the evidence of the marijuana improperly seized from Gibson's vehicle. This evidence clearly induced the convictions. Therefore, we cannot say that the admission was harmless beyond a reasonable doubt. *Id.*

### Conclusion

Based on the foregoing, we hold that the trial court committed reversible error in denying Gibson's motion to suppress the marijuana seized from his vehicle because the warrantless search did not fit within any of the exceptions to the warrant requirement.

Reversed.

SHARPNACK, C.J., and BARNES, J., concur.