# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**CHRIS P. FRAZIER**
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| R.M., | ) | |
| | ) | |
|     Appellant-Respondent, | ) | |
| | ) | |
|         vs. | ) | No. 49A02-1403-JV-206 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
|     Appellee-Petitioner. | ) | |

### APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Gary Chavers, Magistrate
Cause No. 49D09-1402-JD-327

**November 13, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On December 2, 2013, Jane Buckingham was working as a science teacher at Northwest High School in Indianapolis when Appellant-Respondent R.M. requested permission to place his backpack behind Buckingham's desk. Buckingham initially granted R.M. permission to do so, but later became concerned about whether there was contraband in the backpack. Buckingham contacted Indiana Public School Police Sergeant Jeffrey Brunner who searched the backpack, finding a handgun. On February 18, 2014, Appellee-Petitioner the State of Indiana (the "State") filed a petition alleging that R.M. was a delinquent child for committing what would be Class C felony carrying a handgun without a license and Class D felony possession of a firearm inside a school if committed by an adult. Following a fact-finding hearing, the juvenile court adjudicated R.M. to be a delinquent child for committing the above-stated acts and placed R.M. on probation.

On appeal, R.M. argues that the juvenile court abused its discretion in admitting the handgun into evidence during the fact-finding hearing because the handgun was discovered during an unreasonable search of his backpack in violation of the Fourth Amendment to the United States Constitution. Upon review, we conclude that Sergeant Brunner's search of the backpack was reasonable. As such, we further conclude that the juvenile court did not abuse its discretion in admitting the handgun into evidence. Accordingly, we affirm the judgment of the juvenile court.

**FACTS AND PROCEDURAL HISTORY**

On December 2, 2013, Buckingham was working as a science teacher at Northwest

2

High School. Before school started for the day, Buckingham was approached by R.M. R.M. requested permission to place his backpack behind Buckingham's desk. R.M. was in Buckingham's first two classes that day. Although Northwest High School has a policy prohibiting students from carrying backpacks from class to class, Buckingham allowed R.M. to place his backpack near a file cabinet behind her desk. Buckingham did so because she thought that the backpack might contain some equipment that R.M. might need due to a medical condition. R.M. did not take his backpack with him upon leaving Buckingham's classroom. R.M. did not come back for the backpack at the time of day when Buckingham believed R.M. would need the medical equipment.

At some point before the end of the school day, Sergeant Brunner was called to Buckingham's classroom. Sergeant Brunner indicated that he went to Buckingham's classroom after Buckingham had expressed concerns about a backpack left in her room by a student. Sergeant Brunner located the backpack, unzipped it, and looked inside. Upon looking inside the backpack, Sergeant Brunner saw a pair of shoes. Sergeant Brunner noticed the "grip or butt" of a "small caliber semi-automatic handgun with wooden grips" sticking out of one of the shoes. Tr. p. 53. Sergeant Brunner subsequently discovered the magazine for the handgun inside of the other shoe. Sergeant Brunner did not find any bullets in either the handgun or the magazine.

On February 18, 2014, the State filed a petition alleging R.M. to be a delinquent child for committing what would be Class C felony carrying a handgun without a license and Class D felony possession of a firearm in a school if committed by an adult. Following a fact-

3

finding hearing, on February 28, 2014, the juvenile court entered a true finding of delinquency on the basis that R.M. committed acts which would constitute each of the alleged offenses if committed by an adult. The juvenile court subsequently placed R.M. on probation. This appeal follows.

## DISCUSSION AND DECISION

R.M. contends that the juvenile court abused its discretion in admitting certain evidence during the fact-finding hearing. Specifically, R.M. claims that the juvenile court abused its discretion in admitting the handgun recovered from his backpack into evidence because the search of his backpack by Sergeant Brunner was unreasonable under the Fourth Amendment to the United States Constitution. In reviewing R.M.'s claims, we observe that our standard of review on the admissibility of evidence is the same whether the challenge is made by a pre-trial motion to suppress or by a trial objection. *D.L. v. State*, 877 N.E.2d 500, 502 (Ind. Ct. App. 2007) (citing *Ackerman v. State*, 774 N.E.2d 970, 974 (Ind. Ct. App. 2002), *trans. denied*.

> A trial court has broad discretion in ruling on the admissibility of the evidence. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). We will reverse a trial court's ruling on the admissibility of the evidence only when it has been shown that the trial court abused its discretion. *Id*. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary. *Id*. We review de novo the ultimate determination of reasonable suspicion. *Ransom v. State*, 741 N.E.2d 419, 421 (Ind. Ct. App. 2000), *trans. denied*.

*Id*. at 502-03.

Recognizing that "minors in school are subject to supervision and control that could

4

not be exercised over free adults" and considering "the legislature's codification of the custodial and protective role of Indiana public schools," the Indiana Supreme Court has held that "students are entitled to less privacy at school than adults would enjoy in comparable situations." *Linke v. Nw. Sch. Corp.*, 763 N.E.2d 972, 979-80 (Ind. 2002). In addition, the United States Supreme Court has held that "a school official's search of a student is not subject to the fourth amendment warrant requirement and does not require the same degree of suspicion that constitutes probable cause." *Berry v. State*, 561 N.E.2d 832, 837 (Ind. 1990) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1985)). "'Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.'" *Id.* (quoting *T.L.O.*, 469 U.S. at 341). In determining whether a particular search is reasonable, two inquiries must be made. *Id.* (citing *T.L.O.*, 469 U.S. at 341). "First, whether the search was justified at its inception and, second, whether the search as executed was reasonably related in scope to the circumstances which justified the original interference." *Id.* (citing *T.L.O.*, 469 U.S. at 341).

In *T.L.O.*, the United States Supreme Court held an assistant vice principal's search of T.L.O.'s purse was reasonable under the circumstances. 469 U.S. at 346-47. The search conducted in *T.L.O.* was prompted by a teacher's discovery of T.L.O. and another student smoking cigarettes in the school lavatory. *Id.* at 328. Because smoking in the lavatory was a violation of school rules, the teacher reported the incident to the assistant vice principal, who then questioned the students. *Id.* T.L.O. denied that she had been smoking in the lavatory and stated that she did not smoke at all. *Id.* The assistant vice principal searched T.L.O.'s

purse and discovered a pack of cigarettes. *Id.* Upon removing the cigarettes from T.L.O.'s purse, the assistant vice principal discovered a package of cigarette rolling papers. *Id.* This discovery led the vice principal to believe that T.L.O. might possess additional evidence of drug use, and so he searched her purse further, finding marijuana and items linked with smoking marijuana and involvement in drug trafficking. *Id.*

The United States Supreme Court found that the search conducted by the vice principal was reasonable under the circumstances. *Id.* at 346. The search was justified at its inception because T.L.O. had been accused of violating a school rule, *i.e.*, smoking in the school lavatory. *Id.* at 345. Because T.L.O. had denied the accusation in the strongest possible terms when she stated that she did not smoke, the discovery of cigarettes in T.L.O.'s possession would call her denial of the accusations levied against her into question. *Id.* In addition, the teacher's report certainly gave the assistant vice principal reason to suspect that T.L.O. was carrying cigarettes with her; and if she did have cigarettes, her purse was the obvious place in which to find them. *Id.* at 345-46. The assistant vice principal's suspicion that there were cigarettes in the purse "was not an inchoate and unparticularized suspicion or 'hunch,' rather, it was the sort of common-sense conclusio[n] about human behavior upon which practical people—including government officials—are entitled to rely." *Id.* at 346 (internal quotations omitted, brackets in original). Further exploration of T.L.O.'s purse was justified because the discovery of cigarette rolling papers gave rise to the suspicion that she possessed marijuana as well as cigarettes. *Id.* at 347.

In the instant matter, we conclude that the search of R.M.'s backpack amounted to a

reasonable search under the Fourth Amendment. R.M. left his backpack unattended in Buckingham's classroom and did not return for it. While Buckingham testified that she did not remember any specific conversations that she had with Sergeant Brunner on the date in question, Sergeant Brunner testified that Buckingham sought him out and "said that she had some concern about a backpack that was given to her by a student." Tr. p. 44. When Sergeant Brunner asked Buckingham about this concern, Buckingham responded that "she didn't feel right about [the backpack because] she thought there was either drugs or a weapon in the bag." Tr. p. 44. The juvenile court appears to have believed Sergeant Brunner's testimony in this regard and we will not disturb the juvenile court's credibility determinations on appeal. *See Blood v. State*, 272 Ind. 417, 420, 398 N.E.2d 671, 674 (1980) (providing that appellate courts will neither reweigh the evidence nor judge the credibility of witnesses on appeal).

We believe that it was reasonable for Sergeant Brunner to act on Buckingham's suspicions of the presence of drugs or weapons in the backpack. As such, we conclude that the search was justified at its inception. We further conclude that the scope of the search was reasonably limited as Sergeant Brunner found the weapon after merely unzipping the bag and peering inside. Furthermore, we observe that had Sergeant Brunner not acted on the information provided to him by Buckingham, most would consider him derelict in his duties for failing to examine the backpack, thereby exposing the children who attended Northwest High School to unnecessary risk. Thus, we cannot say that his decision to search the backpack was unreasonable.

The judgment of the juvenile court is affirmed.

NAJAM, J., and BAILEY, J., concur.