**Richard H. EDWARDS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 31A01–0103–CR–113.

Court of Appeals of Indiana.

Jan. 18, 2002.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Richard Edwards seeks review of the trial court's admission into evidence of 32 cartons of cigarettes police found in the back of his pick-up truck. He claims the warrantless search of his vehicle did not fall within any of the established exceptions to the warrant requirement, and the trial court abused its discretion in admitting them. Further, Edwards contests the authenticity of a videotape admitted at trial, and claims the State failed to lay an adequate foundation for the videotape's admission under the "silent witness" standard.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts favorable to the judgment show that on July 16, 2000, Richard Edwards entered a Smokey's Discount Tobacco Outlet three separate times, placed cartons of cigarettes into his clothing, and left the store without paying for the cigarettes. The cashier saw Edwards take the cigarettes. After Edwards left the store for the third time, the cashier reviewed the surveillance videotape and reported the theft to police.

Officer Sadler responded to the dispatch for the reported theft. The cashier described Edwards and his vehicle, and provided a partial license plate number. Sadler staked out the store and observed a vehicle matching the description and the partial plate number provided by the cashier. The vehicle pulled into a gas station called "Cowboys." Sadler radioed for backup while observing Edwards pump gas into his vehicle.

Once supporting officers arrived, Sadler placed Edwards under arrest for theft and informed him he had been observed and his activities were on videotape. Sadler also cited Edwards for an expired plate violation, which by statute requires impoundment of the vehicle. While processing Edwards at the scene, Sadler noticed a black unopened garbage bag in the bed of Edwards' truck. Sadler opened the bag, found cartons of cigarettes, and took photos of the contents of the garbage bag.

Edwards was convicted after a jury trial of class D felony theft and was found to be an habitual offender. He was sentenced to seven and one half years in the Department of Correction.

## DISCUSSION AND DECISION

### 1. *The Search*

■ Edwards claims an abuse of discretion by the trial court in its admission of photographs and testimony related to the seizure of 32 cartons of cigarettes from the back of his pick-up truck. The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial

court abused its discretion. *Johnson v. State*, 710 N.E.2d 925, 927 (Ind.Ct.App. 1999). Upon review of a trial court's ruling on a motion to suppress evidence, we will examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *Callahan v. State*, 719 N.E.2d 430, 434 (Ind.Ct.App.1999). We will neither reweigh the evidence nor judge witness credibility. *Johnson*, 710 N.E.2d at 927.

■ Edwards asserts that the warrantless search of his truck was performed outside of the requirements of the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. Edwards correctly argues that "When the prosecution seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing both the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *Fair v. State*, 627 N.E.2d 427, 430 (Ind.1993).

The State argues that the search was well within the established exceptions to the warrant requirement because 1) the search was a valid inventory search; 2) probable cause existed at the time of arrest to support the search; 3) the search was conducted incident to the arrest of Edwards; and 4) the cigarettes were in plain view. We will address each contention in turn.

### A. *Inventory Search*

■ In general, the Fourth Amendment prohibits warrantless searches. *Vehorn v. State*, 717 N.E.2d 869, 875 (Ind.1999); *Berry v. State*, 704 N.E.2d 462, 465 (Ind.1998).

If the search is conducted without a warrant, the burden is upon the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Vehorn*, 717 N.E.2d at 875. An inventory search of a vehicle is one such recognized exception. *Id.*; *Lewis v. State*, 755 N.E.2d 1116, 1125 (Ind.Ct.App.2001).

■ The threshold question in inventory searches is whether the impoundment was proper. *Fair*, 627 N.E.2d at 431. In order to establish that an impoundment was proper, the State must demonstrate: 1) the belief that the vehicle posed some threat or harm to the community or that it was itself imperiled was consistent with objective standards of sound policing, and 2) the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation. *Id.* at 433. An appellate court may determine that a threat or harm to the community is implicated when: 1) the arrest of the driver has left his car unattended on a highway; 2) where the owner of the vehicle cannot be located; and 3) where the vehicle is left on private property and the owner of the property has requested removal. *Gibson v. State*, 733 N.E.2d 945, 957 (Ind.Ct.App.2000).

■ Edwards' truck was not left on a highway, nor is there evidence Edwards' truck posed a hazard. It was evident to law enforcement at the scene that Edwards owned the truck, and there is no evidence that the owner of the Cowboys property had requested its removal. However, the impoundment of Edwards' truck was required by Ind.Code § 9–18–2–43 [1]

---

**1.** That section states in pertinent part:
(a) Notwithstanding any law to the contrary but except as provided in subsection (b), a law enforcement officer authorized to enforce motor vehicle laws who discovers a vehicle required to be registered under this article that does not have the proper certificate of registration or license plate:
(1) shall take the vehicle into the officer's custody; and
(2) may cause the vehicle to be taken to and stored in a suitable place until:

because Edwards was also detained for an expired plate violation.

While the impoundment of the truck was proper, the State failed to show that the search conducted pursuant to the impoundment was reasonable. "The search must be conducted pursuant to standard police procedures, as evidenced by the circumstances surrounding the search." *Stephens v. State,* 735 N.E.2d 278, 282 (Ind.Ct.App.2000), *trans. denied* 741 N.E.2d 1259 (Ind.2000). Searches performed in conformity with standard police procedures are reasonable under the Fourth Amendment. *Vehorn,* 717 N.E.2d at 875. However, the State must present more than conclusory testimony of an officer that the search was conducted as a routine inventory. *Stephens,* 735 N.E.2d at 282; *Rabadi v. State,* 541 N.E.2d 271, 275 (Ind.1989). "The circumstances surrounding the intrusion must also indicate that the search was part of established and routine department procedures which are consistent with the protection of the police from potential danger and false claims of lost or stolen property and the protection of the property of those arrested." *Rabadi,* 541 N.E.2d at 275.

Edwards contends the inventory search of his truck that resulted in the seizure and admission of 32 cartons of cigarettes was a pretextual search for evidence of a crime, and not a proper inventory search. The State disagrees and points to the following evidence by Officer Sadler:

Q: What did you see as you approached the truck, describing the truck itself?

A: As I approached the truck, like I say, I approached Mr. Edwards. In the back of the truck there was a large garbage bag. The bag was shut. It was not opened. It did appear to be full with, what looked like to me, cartons of cigarettes, based on the outline of the contents protruding from the bag.

Q: And where was the bag located in regards to the back of the truck?

A: It was dead square in the middle of the pick-up truck, between the two wheel wells.

Q: Okay. Did you, uh, search the vehicle?

A: Yes I did.

Q: And tell me what steps you took to search the vehicle.

A: Basically, I just opened the bag and looked at the cigarettes to confirm that there were cigarettes in that bag. There was. I then started taking pictures of the cigarettes. I took pictures of the tool box, once I opened it. I took pictures inside the truck, just basically got an inventory to protect myself because I don't want the (inaudible) coming back and saying there was Ten Thousand Dollars in that vehicle that, you know, wasn't there to start with.

(R. at 120–21).

We note initially that the record does not include the substance of any police department policy regarding inventory searches, or even indicate there is such a policy. To show that its actions come within the inventory exception, the State must do more than offer the bald allegation of law enforcement that the search was conducted as a routine inventory. *Stephens,* 735 N.E.2d at 282. The trial court therefore had no evidentiary basis to evaluate whether the inventory search performed on Edwards' truck was in conformity with established local law enforcement policy.

(A) the legal owner of the vehicle can be found; or

(B) the proper certificate of registration and license plates have been procured.

The rule that standardized criteria or established routine must exist as a precondition to a valid inventory search is designed to ensure that the inventory is not a pretext "for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Accordingly, in evaluating the warrantless search of an automobile in *Stephens*, we determined that the search was reasonable in light of the record of processing the vehicle through central receiving. There, the records detailed who towed the car, indicated the detective responsible for the investigation, and described the valid traffic hazard basis for the tow. The detective conducted the search in front of two witnesses, compiled an inventory of all the contents of the vehicle, created a property sheet, and placed the items into the property room of the sheriff's department. 735 N.E.2d at 282.

Finally, we note that inventory searches conducted at the impound lot by an officer assigned to such duties are preferred to searches conducted at the scene, without a warrant, by the arresting officer. *See Fair*, 627 N.E.2d at 436.

█ The circumstances of the search of Edwards' truck at the scene of his arrest, without evidence of the provisions of the police department's inventory searches, take this outside the parameters of a valid inventory search.

## B. *Probable Cause*

█ The State next asserts no warrant was needed to search Edwards' truck because there was probable cause to believe that fruits of a crime were contained in the truck. One exception to the warrant requirement is probable cause to believe an operable vehicle contains contraband or evidence of a crime. *Gibson*, 733 N.E.2d at 951.

█ When probable cause exists to believe that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment because of the exigent circumstances arising out of the likely disappearance of the vehicle. *California v. Acevedo*, 500 U.S. 565, 569, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). If the search is supported by probable cause, a warrantless search of a vehicle may also include a search of a container or package found in the vehicle. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572(1982).

█ Facts necessary to show probable cause for a warrantless search are not materially different from those that would authorize the issuance of a warrant if presented to a magistrate. *Young v. State*, 564 N.E.2d 968, 970 (Ind.Ct.App.1991). Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to conclude that a search of those premises will uncover evidence of a crime. *Gibson*, 733 N.E.2d at 951–52.

█ There is no evidence that any exigent circumstances existed. Examples of exigent circumstances have been found (1) where a suspect is fleeing or likely to take flight in order to avoid arrest; (2) where incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; (3) where a violent crime has occurred and entry by police can be justified as means to prevent further injury or to aid those who have been injured; and (4) in cases that involve hot pursuit or movable vehicles. *Snellgrove v. State*, 569 N.E.2d 337, 340 (Ind. 1991)

We find no such exigent circumstances in the case before us. The police impounded Edwards' vehicle, insuring its custody

for the time it would have taken for officers to procure a warrant to conduct a legal search. There was no danger that the vehicle or the evidence contained therein might be destroyed or removed. Although the police had probable cause to wish to search the vehicle, there were no exigent circumstances justifying a warrantless search.

### C. *Search Incident to Arrest*

 The State asserts the warrantless seizure of the garbage bag of cartons of cigarettes was permissible as a valid search incident to arrest. It was not. A police officer may, incident to a lawful arrest, conduct a warrantless search "of the arrestee's person and the area within his or her control." *Culpepper v. State,* 662 N.E.2d 670, 675 (Ind.Ct.App.1996). When the occupants of a vehicle are arrested, the police may search the driver and passengers, and any containers found in the passenger compartment. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768, (1981). One traditional rationale for the search incident to arrest was to protect police officers by "remov[ing] any weapons that [the arrestee] might seek to use." *Id.* at 457, 101 S.Ct. 2860. Accordingly, the scope of a search incident to a valid arrest is generally limited to a search of the person of the arrestee and the area within his immediate control to which he could reach for weapons or to destroy evidence. *Gibson,* 733 N.E.2d at 954. A search going beyond the immediate control of the arrestee is unlawful unless accompanied by a valid search warrant. *Id.*

 In *Gibson,* a police officer followed Gibson's van into the parking lot of a convenience store. The officer approached Gibson after Gibson had parked the van and was walking toward the store. Marijuana was found in the interior of his van but it was not on Gibson's person nor was it within the area of his immediate control. We determined the scope of the search incident to Gibson's arrest was limited to his person because he was stopped and arrested in the parking lot of the convenience store and not his vehicle. 733 N.E.2d at 955.

When Edwards was arrested, he was outside his truck filling it with gas. The State offered no evidence that the garbage bag, which was located in the back of the truck and outside of Edwards' reach, posed a threat to the police or that Edwards could have destroyed the evidence in the bag. Accordingly, this was not a valid search incident to an arrest.

### D. *Plain View*

 The State asserts that the 32 cartons of cigarettes inside of an unopened, opaque, garbage bag in the bed of Edwards' truck were found in plain view. Under the plain view doctrine, three conditions must exist to justify the warrantless seizure of evidence: (1) "the officer [must] not have violate[d] the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the "incriminating character" of the evidence must be "immediately apparent"; and (3) the officer must "have a lawful right of access to the object itself." *Middleton v. State,* 714 N.E.2d 1099, 1101 (Ind.1999) (*citing Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112, (1990)). The "immediately apparent" prong requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime. *Taylor v. State,* 659 N.E.2d 535, 538 (Ind.1995). This does not require, however, that the officer "must 'know' that the item is evidence of criminal behavior." *Id.* at 539. Rather, "[p]robable cause requires only that the information available to the officer would lead a person of rea-

sonable caution to believe the items could be useful as evidence of a crime." *Id.*

Officer Sadler testified that the black garbage bag in the back of Edwards' pickup truck was closed, but that the outlines of the items in the garbage bag indicated it contained cartons of cigarettes. In other words, as to Officer Sadler's point of view, the fact the garbage bag was filled with cartons of cigarettes was immediately apparent. Officer Sadler knew that the fruits of the crime were cartons of cigarettes. As the contents of the garbage bag were readily apparent to Officer Sadler, the search was valid under the plain view exception.

### 2. *Videotape as Silent Witness*

The State introduced as evidence the videotape of the theft. Claiming he had not been offered the same copy with the same detail, interruptions, and apparent "taping over," Edwards' trial counsel explained to the judge that the tape the State offered was not the same tape he had viewed during the discovery process. The State contended it was the same tape, but noted that as the store clerk replayed the video for Officer Sadler at the scene, she taped over some other segments of the day's footage.

On appeal, Edwards argues the State laid an insufficient foundation for the admission of the videotape, and failed to meet the "silent witness" standard for the admission of photographic evidence. Edwards specifically claims that 1) the videotape is interrupted with footage from a previous day, 2) the interruption falls between the alleged second and third visits on the tape, 3) both attorneys for Edwards related to the court that the tape considered for admission was not the same tape they had viewed through the discovery process. Because the tape was not subject to the special foundational requirements

for "silent witness" evidence, we find no error.

Under a "silent witness" theory, videotapes and photographic evidence may be admitted as substantive evidence, rather than merely as demonstrative evidence. *Shepherd v. State*, 690 N.E.2d 318, 323 (Ind.Ct.App.1997). In *Bergner v. State*, 397 N.E.2d 1012, 1017 (Ind.Ct.App.1979), this court set out the foundational requirements for the admission of photographs offered as substantive evidence rather than demonstrative evidence under the "silent witness" theory. We held that when offered for such a purpose there must be a strong showing of authenticity and competency including proof that the photograph has not been altered in any way. *Id.*

This higher standard is applied in situations where there is no one who can testify as to its accuracy and authenticity because the photograph must "speak for itself" and because such a "silent witnesses" cannot be cross-examined. *Id.* at 1015. For example, in cases involving photographs taken by automatic cameras, there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera. *See Murry v. State*, 179 Ind.App. 305, 308, 385 N.E.2d 469, 472 (1979).

Although the tape's possible alteration concerns us, the videotape from the Smokey's retail store was not offered as a "silent witness." The clerk that was present during the alleged thefts testified at trial and was available for cross-examination. She was able to identify Edwards as the person recorded on the videotape and was able to independently describe his activities; she also testified to the loading, labeling, and re-use of the videotapes. As

such, we find that the trial court did not abuse its discretion in admitting the tape, in light of the clerk's testimony regarding the possibility she accidentally "taped over" parts of the videotape before it entered the State's custody.

## CONCLUSION

We affirm Edwards' conviction of Class D felony theft, as the search that revealed the cigarettes was valid under the plain view exception to the warrant requirement. The admission of the videotape, supported by the testimony of the clerk who was present at the scene of the crime and available for cross-examination, was not error.

Affirmed.

NAJAM, J., and BAKER, J., concur.